## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

JUSTIN BLOXHAM,[1]

              Plaintiff,

   v.

ALLSTATE INSURANCE COMPANY,

              Defendant.

CIVIL ACTION NO. 3:19-CV-00481

(MEHALCHICK, M.J.)

## MEMORANDUM

This is a breach of contract action predicated on this Court's diversity jurisdiction arising out of the applicability of a homeowner's insurance policy. After Plaintiff sustained an accidental fire loss to his home and personal property, Defendant denied payment under the insurance policy on the bases that the Plaintiff did not reside at the subject property and that the Plaintiff and/or the Plaintiff's representatives provided material misrepresentations to the Defendant. (Doc. 29, ¶ 42; Doc. 30, ¶ 42). Presently before the Court is Defendant Allstate Insurance Company's ("Allstate") Motion for Summary Judgment (the "Motion"). (Doc. 27). The Motion has been fully briefed. (Doc. 27; Doc. 28; Doc. 31). For the reasons that follow, the Court denies Defendant's Motion for Summary Judgment.

### I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs Nanette and Justin Bloxham initiated this action in the Court of Common Pleas of Susquehanna County, Pennsylvania, by filing a Praecipe for Writ of Summons and

---

[1] Plaintiff Nanette Bloxham's claim was dismissed with prejudice by Order on October 9, 2019. (Doc. 19). As such, the Clerk of Court is directed to terminate her from this matter.

a two-Count Complaint asserting claims for breach of contract (Count I) and statutory bad faith (Count II). (Doc. 1-2, at 1, 5-10). On March 18, 2019, Defendant removed the case to this Court. (Doc. 1). Defendant subsequently moved to dismiss the case and the motion was granted, though Plaintiffs were given leave to amend their pleading. (Doc. 3; Doc. 7).

Plaintiffs filed an Amended Complaint on June 2, 2019, containing one Count of breach of contract. (Doc. 9). Defendant filed its Answer to the Amended Complaint on June 24, 2019. (Doc. 13). On August 16, 2019, Defendant filed a Motion for Judgment on the Pleadings, which was denied. (Doc. 16; Doc. 20). In opposing Defendant's Motion for Judgment on the Pleadings, Plaintiffs conceded that Nanette Bloxham did not reside at the Property at issue, thus her breach of contract claim was dismissed with prejudice. (Doc. 19, at 4; Doc. 20).

On April 16, 2020, the parties consented to the undersigned's jurisdiction. (Doc. 23). Defendant's Motion for Summary Judgment was filed on July 9, 2020, with the Brief in Support and the Statement of Facts filed the next day. (Doc. 27; Doc. 28; Doc. 29). Plaintiff's Brief in Opposition and Response to the Statement of Facts were filed on July 30, 2020. (Doc. 30; Doc. 31). The Motion for Summary Judgment is now ripe for disposition.

## II.   MOTION FOR SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return

a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must go beyond the pleadings with affidavits or declarations, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324. The non-movant must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*,

3

477 U.S. at 323. Furthermore, mere conclusory allegations and self-serving testimony, whether made in the complaint or a sworn statement, cannot be used to obtain or avoid summary judgment when uncorroborated and contradicted by other evidence of record. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also Thomas v. Delaware State Univ.*, 626 F. App'x 384, 389 n.6 (3d Cir. 2015) (not precedential).

### III.   STATEMENT OF FACTS

This factual background is taken from Defendant's Statement of Facts and accompanying exhibits. (Doc. 29). Plaintiff responded with his statement of material facts, pursuant to Local Rule 56.1, on July 30, 2020. (Doc. 30). As required by Local Rule 56.1, all material facts set forth in Defendant's statement will be deemed admitted unless controverted in Plaintiff's statement of material facts. Where Plaintiff disputes facts and supports those disputes in the record, as also required by Local Rule 56.1, those disputes are noted. In addition, the facts have been taken in the light most favorable to the Plaintiff as the non-moving party, with all reasonable inferences drawn in his favor.

### A.   THE LOSS

On May 21, 2017, Plaintiff reported a fire loss ("Loss") arising from a May 18, 2017, fire at 2082 State Route 247, Clifford Township, Pennsylvania 18407, Lackawanna County ("the Property"). (Doc. 29, ¶¶ 2, 25; Doc. 30, ¶¶ 2, 25).  The Property was insured by Allstate Deluxe Homeowner's Policy #000901701787 (the "Policy"). (Doc. 29, ¶ 2; Doc. 30, ¶ 2). Plaintiff's Amended Complaint alleges breach of contract due to denial of coverage over the Loss. (Doc. 29, ¶ 10; Doc. 30, ¶ 10). Plaintiff's Amended Complaint alleges *inter alia* that (1) Plaintiff Justin Bloxham resided at the Property and "he was making ongoing and continuous

repairs and renovations to the dwelling so he could continue to reside there," (2) Plaintiff Justin Bloxham "produced a valid driver's license reflecting his address as the same address as where the fire occurred," (3) Plaintiff Justin Bloxham testified "that he has lived at the subject property for more than 10 years prior to the date of loss in this matter," (4) "Plaintiff Justin Bloxham slept at [the Property]. Plaintiff was settled there and made that residence his home. Plaintiff has his personal belongings there and was at the home every day," and (5) on May 18, 2017, "Plaintiff Justin Bloxham did reside at [the Property]." (Doc. 29, ¶ 11; Doc. 30, ¶ 11).

After receiving report of the Loss to the Property, Allstate investigated the Loss and, based on its investigation, the Claim was denied because Plaintiff did not reside at the Property and because Plaintiff and/or his representative made "misrepresentations of facts material to the claim including but not limited to misrepresentations related to residency, condition of the Property prior to the fire, ownership of the Property and issues regarding utilities[2] at the Property." (Doc. 29, ¶ 28; Doc. 29-11, at 2).[3]

B. ALLSTATE POLICY LANGUAGE

The Policy provides *inter alia*:

**Definitions Used In This Policy**

---

[2] PPL Electric bills provided by Nanette Bloxham during the adjustment of the claim indicated no electric usage. After litigation was commenced, PPL was served with a subpoena for electric records based on the account for which bills were provided during the claim investigation. Upon receipt of the subpoena documents from PPL and discussions with representatives of PPL, it was learned that the Property had two electric meters. One electric meter evidenced electric usage, the other (for which bills were provided by Nanette Bloxham) evidence no electric usage. (*See* Doc. 29-12).

[3] Plaintiff denies this averment yet fails to identify support for its dispute in the record as required by Local Rule 56.1.

5

1. "You" or "Your" means the person named on the Policy Declarations as the insured and that person's resident spouse.

3. "Insured person(s)" means you and, if a resident of your household: (a) any relative; and (b) any dependent person in your care.

5. "Building structure" – means a structure with walls and a roof.

7. "Residence premises" – means the dwelling, other structures and land located at the address stated on the Policy Declarations.

12. "Dwelling" – means a one, two, three or four family building structure, identified as the insured property on the Policy Declarations, where you reside and which is principally used as a private residence.

**Insuring Agreement**
The terms of this policy impose joint obligations on the person named on the Policy Declarations as the insured and on that person's resident spouse. These persons are defined as you or you. This means that the responsibilities, acts and omissions of a person defined as you or your will be binding upon any other person defined as you or your.

**Concealment or Fraud**
We do not cover any loss or occurrence in which any insured person has concealed or misrepresented any material fact or circumstance.

**Coverage A – Dwelling Protection**
**Property We Cover Under Coverage A:**
Your dwelling including attached structures.

(Doc. 29, ¶ 29; Doc. 30, ¶ 29).

C. Allstate Investigation

Allstate retained the services of David Klitsch of Technical Fire Analysis LLC to inspect the Loss and prepare a Fire report based upon his investigations of the Property that took place on May 24, 2017, and June 6, 2017. (Doc. 29, ¶ 30; Doc. 30, ¶ 30). The Report of Mr. Klitsch included the following findings: (1) The first-floor level of the Property collapsed into the basement but there was no corresponding fire damage to cause this collapse; (2) the

Property floor joists were rotten where the first floor collapsed into the basement; (3) there was a lack of furnishings in the Property; (4) both refrigerators in the Property were empty; (5) Plaintiff Justin Bloxham told Klitsch that there was electric at the Property and he pays the electric bill, although he could not identify an approximate amount; (6) the Property had a large amount of graffiti on the walls; (7) there was a lack of clothing at the Property; and (8) the grass around the Property was overgrown. (Doc. 29, ¶ 31; Doc. 30, ¶ 31). Mr. Klitsch also conducted interview of several individuals and learned *inter alia* the following: (1) From Plaintiff Justin Bloxham: He resided at the Property between one and one and one half weeks out of the month. The remaining time he resided with his mother, Nanette Bloxham; and (2) from Susan Schreiber, an affiliate of the church across the street from the Property: She has not observed any activity in the Property in approximately three to four years and was of the impression that the Property was abandoned.[4] (Doc. 29, ¶ 32; Doc. 30, ¶ 32).

Allstate retained the services of ISG Private Investigator Jeffrey Feger to conduct an investigation of the Property, the neighboring area, and to prepare a report regarding his investigation. (Doc. 29, ¶ 33; Doc. 30, ¶ 33). Mr. Feger's investigation included visiting the Property and taking a statement from Pastor Robert Schreiber of the St. James Episcopal Church that neighbors the Property. (Doc. 29, ¶ 34; Doc. 30, ¶ 34). Pastor Schreiber stated that he had been working at the neighboring church for ten years and had never seen anyone

---

[4] Defendant includes various statements in its material facts that may be inadmissible when considering the instant motion due to their violations of the rule against hearsay. *See Smith v. City of Allentown*, 589 F.3d 684, 693 (3d Cir. 2009) (explaining that inadmissible hearsay may not be considered for purposes of summary judgment). The Court's determination of whether particular statements may be considered will occur if and when the Court addresses the parties' arguments.

living at the Property. (Doc. 29, ¶ 34; Doc. 30, ¶ 34). Mr. Feger interviewed the local United States Mail Carrier who said the Property was vacant and no one was residing in the Property. (Doc. 29, ¶ 35; Doc. 30, ¶ 35). Mr. Feger also noted that the Property was overgrown with weeds and had graffiti on it. (Doc. 29, ¶ 36; Doc. 30, ¶ 36).

On July 6, 2017, Nanette Bloxham gave a recorded statement to Allstate in which she informed Allstate *inter alia* that: (1) She had not been to the Property for more than six months prior to the incident; (2) she resides in a house separate from the Property which she identified as 1610 State Route 247, Clifford Township, Pennsylvania 18407; and (3) Plaintiff Justin Bloxham stays at her house at 1610 State Route 247 more often than he stays at the Property involved in the fire. (Doc. 29, ¶ 37; Doc. 30, ¶ 37). On July 6, 2017, Plaintiff Justin Bloxham also gave a recorded statement in which he stated that he stayed at the Property two weeks out of every month. (Doc. 29, ¶ 38; Doc. 30, ¶ 38).

On January 29, 2018, Nanette Bloxham was examined under oath. (Doc. 29, ¶ 39; Doc. 30, ¶ 39). She testified that: (1) She has not resided at the Property in the last twelve years; (2) no one resided at the Property for seven years prior to the May 18, 2017, fire; (3) she resides at 1610 State Route 247, Clifford Township, Pennsylvania; (4) her son Justin Bloxham has lived with her at 1610 State Route 241 for approximately ten years; and (5) her son Justin Bloxham's "full-time residence" was with her at 1610 State Route 247, Clifford Township, Pennsylvania, which is not the Property involved in the fire. (Doc. 29, ¶ 39; Doc. 29-19). Plaintiff denies this statement and cites Nanette Bloxham's recorded statement to Allstate on July 6, 2017, in which she said that Justin Bloxham was redoing the bathroom at the Property and that "he would stay there often." (Doc. 30, ¶ 39; Doc. 29-17, at 10-11).

8

On January 29, 2018, Plaintiff Justin Bloxham was also examined under oath. (Doc. 29, ¶ 40; Doc. 30, ¶ 40). He testified that: (1) He had not been at the Property for a week prior to the fire; (2) he moved out of the Property prior to the fire; and (3) he lived with Nanette Bloxham at 1610 State Route 247, Clifford Township, Pennsylvania.[5] (Doc. 29, ¶ 40; Doc. 29-20, at 2, 4-6). Plaintiff denies these assertions and identifies evidence in the form of the address on his driver's license being the Property,[6] and his testimony that he purchased the home in approximately 2003 from his aunt and that he slept at the Property at night. (Doc. 30, ¶ 40; Doc. 16-13, at 14, 32, 38).[7]

D. CONCLUSION OF CLAIM INVESTIGATION

On May 3, 2018, Allstate sent a letter to Plaintiffs and their counsel, Thomas Munley, denying coverage for the Loss and damages claimed by Plaintiffs based on the terms and conditions of the Policy, each of which standing alone results in no coverage. (Doc. 29, ¶ 41; Doc. 30, ¶ 41). The basis for the denial includes the following: (1) Plaintiff did not reside at the Property; (2) Plaintiff and/or his representative made misrepresentations, each of which are grounds for denial of coverage under the Policy, regarding facts material to the claim related to residency, ownership of the Property, and the condition of the Property. (Doc. 29, ¶ 42; Doc. 30, ¶ 42). Plaintiff clarifies that he contends that he resided at the property in

---

[5] The Court notes that Justin Bloxham testified to moving out of the Property prior to the fire "for a bit." (Doc. 29-20, at 6). The Court also notes that Justin Bloxham testified to *currently living* with Nanette Bloxham at 1610 State Route 247. (Doc. 29-20, at 2).

[6] The driver's license was issued on March 3, 2014, and expired on March 11, 2018. (Doc. 16-13, at 14).

[7] Plaintiff also avers that he testified to residing full time at the Property and that all of his belongings were kept there, however this is not supported in the record. (Doc. 30, ¶ 40; Doc. 16-13).

question at the time of the fire. (Doc. 30, ¶ 42).

## IV. DISCUSSION

### A. THE RESIDENCY REQUIREMENT

Defendant's first ground for summary judgment is that "the Policy clearly makes coverage conditional on the Insured residing at the Property and credible evidence establishes that Plaintiff Justin Bloxham did not reside at the Property." (Doc. 28, at 1). Defendant contends that the Property must be a "dwelling" to be covered by the Policy, and for it to be a dwelling it "must be where the Insureds resides and must be used principally as a private residence." (Doc. 28, at 10). According to Defendant, Plaintiff's own testimony is that he stayed at the Property only sporadically and extrinsic evidence shows that he did not reside at the Property at the time of the fire. (Doc. 28, at 11).

Plaintiff does not dispute that coverage under the Policy is conditioned on him residing at the Property. (Doc. 31, at 6, 8-9); (*see* Doc. 29-1, at 6, 18, 19) (Plaintiff's policy at the time of the fire showing "Dwelling Protection" and defining "dwelling" as the building structure where the Insured resides). Rather, Plaintiff contends that "at the time of the fire, the Plaintiff, Justin Bloxham, was residing at the property in question full time, his presence was not occasional, sporadic or temporary." (Doc. 31, at 9). Plaintiff supports his residence at the Property with claims that he kept all of his belongings there including furniture, slept there "on a nightly basis," was remodeling the Property, had a driver's license with the Property's address on it, and purchased the home from his aunt in 2003. (Doc. 31, at 9).

The outcome of Defendant's motion depends on the definition of "reside," and whether the record contains evidence sufficient for a reasonable juror to conclude that Plaintiff resided at the Property. "In interpreting the language of an insurance policy, the goal is to

10

ascertain the intent of the parties as manifested by the language of the written instrument. Our Supreme Court has instructed that the polestar of our inquiry … is the language of the insurance policy." *Berg v. Nationwide Mut. Ins. Co.*, 44 A.3d 1164, 1170 (Pa. Super. 2012) (internal citations and quotation marks omitted). The Superior Court of Pennsylvania discussed the meaning of the term "resident" as used in an insurance policy as follows:

> The Courts of this Commonwealth have historically recognized the classical definitions of the words dom[i]cile and residence. Domicile being that place where a man has his true, fixed and permanent home and principal establishment, and to which whenever he is absent he has the intention of returning.
>
> Residence being a factual place of abode. Living in a particular place, requiring only physical presence.
>
> Though the two words may be used in the same context, the word resident as used in the policy, without additional words of refinement, *i.e.*, permanent, legal, etc., would carry the more transitory meaning.
>
> *Lebanon Mut. Ins. Co. v. Lopresti*, 2013 WL 11256828, at *2 (Pa. Super. 2013) (quoting *Krager v. Foremost Ins. Co.* 450 A.2d 736, 737-38 (Pa. Super. 1982)).

The Third Circuit Court of Appeals, applying Pennsylvania law, has defined "reside" as "to settle oneself or thing in a place; to be stationed; remain; stay." *St. Paul Fire and Marine Ins. Co. v. Lewis*, 935 F.2d 1428, 1431 (3d Cir. 1991). "Occasional, sporadic, and temporary contacts are insufficient." *Lewis*, 935 F.2d at 1431-32. At minimum, "some measure of permanency or habitual repetition" is required to reside. *Erie Insurance Exchange v. Weryha*, 931 A.2d 739, 744 (Pa. Super. 2007). Intention is not a relevant consideration. *Wall Rose Mut. Ins. Co. v. Manross*, 939 A.2d 958, 965 (Pa. Super. 2007).  In determining whether an individual "physically lives" in a particular place so as to "reside" there, courts must examine the facts of the case and come to a common-sense decision. *Manross*, 939 A.2d at 965. The insured has

the burden of establishing coverage under an insurance policy. *Erie Ins. Exch. v. Transamerica Ins. Co.*, 533 A.2d 1363, 1366-67 (Pa. 1987).

    The Pennsylvania Superior Court thoroughly examined the interpretation of the word "resident" in *Amica Mutual Insurance Co. v. Donegal Mutual Insurance Co.*, 545 A.2d 343 (Pa. Super. 1988). That case concerned an auto insurance provision; the driver was the child of divorced parents and the insurance policy was the father's. *Amica*, 545 A.2d at 345. For the father to recover under the policy, the driver, his daughter, had to "actually reside" in his household. *Amica*, 545 A.2d at 346. The driver testified that she stayed overnight at her father's house three to five times per month, which the trial court found was "sporadic" due to the time not being "significant and scheduled." *Amica*, 545 A.2d at 345, 349. She had "a closet or two full of clothes" at her father's house, along with approximately forty pairs of shoes, books, cosmetics, stuffed animals, tennis equipment, and a pet rabbit. *Amica*, 545 A.2d at 345. She received mail at her father's house. *Amica*, 545 A.2d at 345. The court recognized that an individual could reside at multiple locations, however only when time is consistently divided between multiple locations does he or she reside at both locations. *Amica*, 545 A.2d at 348 (citing *Nationwide Insurance Co. v. Frazier*, 1986 WL 2136 (Mercer Cnty. Ct. Com. Pl.)) (holding that a child who spent approximately five days per week during the winter and two to three days per week in the summer at the house of the insured was a resident)). When the person stays overnight only "occasionally" and irregularly then residence is not established. *Amica*, 545 A.2d at 348-49.

> "The fact that [the driver] kept numerous personal items at her father's house does not compel a conclusion that she resided there as a matter of physical fact. Rather, it lends support to the conclusion that she *had* lived there and that she

*intended* to live there again. These considerations, however, are not pertinent to the present issue."

*Amica*, 545 A.2d at 349.

Important indicators of residence are that the person: (1) stays overnight for a significant amount of time and on a consistent basis, even if not full-time; and (2) has a space devoted solely to his or her sleep. *See Lebanon Mut. Ins. Co. v. Lopresti*, 2013 WL 11256828, at *3 (Pa. Super. 2013) (adopting the holding that "sleeping on a couch, rather than on one's own bed in one's own bedroom, is more indicative of a temporary arrangement for convenience than residence," even if the person sleeps on the couch every night); *Amica*, 545 A.2d at 348-49.

Here, Plaintiff has the burden of establishing that he was residing at the Property at the time of the fire. *See Transamerica Ins. Co.*, 533 A.2d at 1366-67. Plaintiff supports his residence at the Property with claims that he kept all of his belongings including furniture there, he slept there "on a nightly basis," was remodeling the Property, had a driver's license with the Property's address on it, and purchased the home from his aunt in 2003. (Doc. 31, at 9).

Turning first to the issue of how often and regularly Plaintiff slept at the Property, the only record evidence identified by Plaintiff in support of his averment that he slept there nightly is the following testimony from his sworn deposition:

Q. When had you last slept at that property … prior to the fire?

A. … probably the last time I was there.

Q. Okay.

A. I would say … when I spackled. [Plaintiff had spackled a week before the fire.]

13

Q. Okay. Prior to when you spackled, when was the last time that you spent a night in the property?

A. Oh, I – I never go more than – like, I spent my nights there.

Q. You spent your nights at –

A. at the [Property]. I will work there until I'm tired. I was sanding the floors.

(Doc. 16-13, at 37-38); (*see* Doc. 27-20, at 5-6, 19-20) (establishing Plaintiff had last been at the Property one week prior to the fire); (*see also* Doc. 31, at 9) (Plaintiff's Brief in Opposition supporting the statement that Plaintiff sleeps at the residence at night with the above testimony).

In addition to this testimony, the record contains a recorded statement from Nanette Bloxham that Plaintiff would stay at the Property "often." (Doc. 27-19, at 11). "When he wasn't here he'd be there," she said. (Doc. 27-19, at 11).[8]

In support of summary judgment, Defendant submits a variety of statements made by the Plaintiff. (Doc. 28, at 11). First, Defendant alleges that in a recorded statement to Allstate on July 6, 2017, Plaintiff specified that he stayed at the Property only sporadically. (Doc. 28, at 11). Plaintiff, in fact, did not state that he stayed at the Property "sporadically," rather he said that he had a difficult time answering the question of where his primary place of sleeping was and that he probably stayed at the Property two weeks per month. (Doc. 27-20, at 5, 20). Second, Defendant alleges that in his sworn testimony, Plaintiff said that he lived with Nanette at the 1610 property. (Doc. 28, at 11). This statement, however, was clearly in reference to where he was living at the time he delivered the sworn testimony, after the fire at the Property. (Doc. 29-20, at 2-3). Additionally, an individual may have two residences at the

---

[8] Plaintiff further submits that he testified to residing "full time" at the Property, however this is not supported in the record. (Doc. 30, ¶ 40).

14

same time. *Amica*, 545 A.2d at 348. Third, Defendant submits that Plaintiff testified to moving out of the Property prior to the period leading up to the fire. (Doc. 28, at 11). Again, this allegation misconstrues Plaintiff's statement as he said that he lived at the Property continuously before moving out of the area *for a bit*. (Doc. 27-20, at 5-6). Plaintiff testified that during this time, when he was going to college and living with a girlfriend, he would always come back to the Property to sleep. (Doc. 27-20, at 6).

The record contains additional indicators that the Plaintiff resided at the Property. Plaintiff testified that he received mail at the Property's address, that he provided the Property's address for income tax purposes, and his driver's license in effect at the time of the fire contained the Property's address.[9] (Doc. 16-9, at 3; Doc. 16-13, at 13, 14). Plaintiff also testified to keeping clothes at the Property, and his mother, in her recorded statement, said that furniture and a bed remained at the Property. (Doc. 16-13, at 55; Doc. 16-8, at 15-16). Finally, Plaintiff testified that he was the only one with keys to the Property, he repeatedly referred to the Property as "my house" when testifying, and his mother stated that it was correct to refer to the Property as "Justin's place." (Doc. 16-13, at 56; Doc. 16-9, at 23; Doc. 16-8, at 10).

Even if Defendant were to present vast amounts of evidence in support of Plaintiff not residing at the Property, it is not the Court's role to weigh the evidence or adjudge credibility. *Anderson*, 477 U.S. at 249. If a reasonable juror could look at the record and decide that Plaintiff resided at the Property, then summary judgment on the issue of residence must fail.

---

[9] Though this address may have served multiple residences, all inferences must favor the non-movant for purposes of summary judgment. *Pastore*, 24 F.3d at 512.

*See Farrell,* 206 F.3d at 278. Plaintiff's sworn testimony that he "spent [his] nights there" – approximately two weeks per month – is corroborated by his mother's statements that he would stay at the Property "often" and that it was "Justin's place." (Doc. 16-13, at 37-38; Doc. 27-19, at 11; Doc. 27-20, at 20; Doc. 16-8, at 10). Furthermore, Plaintiff's use of the Property's address for his driver's license and mail, and the furniture – including a bed – and clothes kept at the Property indicate the Property was Plaintiff's place of abode. *See Allstate Ins. Co. v. Naskidashvili,* 2009 WL 399793, at *3 (E.D. Pa. 2009) (explaining that Pennsylvania courts consider where an individual sleeps, eats, receives mail, and keeps personal possessions in determining the individual's residence). Keeping in mind that the term "residence" carries a more transitory meaning than the term "domicile," the record evidence is sufficient to allow a reasonable jury to conclude that Plaintiff resided at the Property at the time of the fire. *See Lopresti,* 2013 WL 11256828, at *2.

### B. MATERIAL MISREPRESENTATIONS

Defendant's second ground for summary judgment is that it has no duty to cover losses under the Policy because Nanette and Justin Bloxham both made misrepresentations of material facts. (Doc. 28, at 14). There is no dispute that the Policy states, "We do not cover any loss or occurrence in which any insured person has concealed or misrepresented any material fact or circumstance." (Doc. 29, ¶ 29; Doc. 30, ¶ 29). Defendants submit that if Plaintiff resided at the Property at the time of the fire, then his and Nanette Bloxham's sworn and unsworn statements that he did not reside at the Property must be material misrepresentations. (Doc. 28, at 14). In opposition to the Motion, Plaintiff avers that he testified to residing full time at the Property. (Doc. 31, at 11).

16

For an insurance carrier to avoid coverage due to misrepresentation, the insurer must establish that the insured's representation: (1) was false, (2) was made with the knowledge that the representation was false when made or was made in bad faith, and (3) was material to the risk being insured. *New York Life Insurance Co. v. Johnson*, 923 F.2d 279, 281 (3d Cir. 1991). The insurer must show that the insured made the misrepresentation with a deliberate intent to deceive. *Donaldson v. Farm Bureau Mutual Automobile Insurance Co.*, 14 A.2d 117, 118 (Pa. 1940).

Here, Defendant fails to establish that either of the Bloxhams made statements that they did not reside at the Property with knowledge that such statements were false or with a deliberate intent to deceive. *See Johnson*, 923 F.2d at 281; *Donaldson*, 14 A.2d at 118. Defining and determining the term "reside" is a complicated endeavor. *See e.g., Lopresti*, 2013 WL 11256828, at *2; *Weryha*, 931 A.2d at 744. Defendant identifies no record evidence that the Bloxhams knew the meaning of "reside." (Doc. 28, at 12-14). It is unknown if the Bloxhams even knew that an individual could simultaneously reside at two locations. *See Amica*, 545 A.2d at 348. So, when Nanette Bloxham testified that her house, rather than the Property, was Plaintiff's full-time residence, it is unclear that she knew her statement was false and that she intended to deceive. (Doc. 16-12, at 24). Furthermore, it has not yet been established that Plaintiff resided at the Property. This fact is in dispute and is left for a jury to decide. Therefore, Defendant has not established that the Bloxhams' alleged misrepresentations were actually false. *See Johnson*, 923 F.2d at 281.

17

Having failed to establish the falsity and the knowledge requirement of the Bloxhams' alleged misrepresentations, Defendant's Motion for Summary Judgment shall not be granted on that ground. *See Johnson*, 923 F.2d at 281.

C. Conclusion

Based on the foregoing, Defendant's Motion for Summary Judgment (Doc. 27) is **DENIED**.

An appropriate Order shall follow.

Dated: November 16, 2020                              *s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States Magistrate Judge**

18